UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
**FILED**
OCT 14 2005
AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

CIVIL ACTION NO. 04-393-GWU

TOMMY HALL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Hall

       Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id. Accord, Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hall

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Tommy Hall, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of borderline intellectual functioning, a generalized affective disorder, and an undifferentiated somatoform disorder. (Tr. 22). Nevertheless, based in part on the testimony of a vocational expert (VE) and a medical expert (ME), the ALJ determined that Mr. Hall retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 24-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of Mr. Hall's age of 37 to 41 years, unskilled and semiskilled work experience, and with a "limited" education, could perform any jobs assuming that he had no exertional impairments, but was "moderately limited" in his ability to handle detailed job instructions, to maintain attention and concentration for extended periods of time, to

7

maintain attention and concentration for extended periods of time, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal work day and work week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. (Tr. 83-4). The ALJ also specified that the person was able to carry out simple instructions in a low stress setting with limited contact with the public. (Tr. 84). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 84-5). If the individual was also limited to a third-grade reading ability, the VE stated that the jobs and job numbers would not be affected. (Tr. 85).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The Court briefly notes that the ALJ's mental restrictions are supported by the medical evidence,[1] including treatment notes from the Kentucky River Comprehensive Care Center, where the plaintiff was given the diagnosis by a therapist of a conversion disorder and personality disorder, with a Global

---

[1] The plaintiff did not raise this as an issue.

Hall

Assessment of Functioning (GAF) score of 60 "+/- 10" (Tr. 387), by a consultative psychological evaluation which produced IQ scores in the low 70s and a third-grade reading ability, although the scores were thought to be an underestimate of the plaintiff's true abilities (Tr. 396-400), by mental residual functional capacity assessments completed by state agency reviewing psychologists (Tr. 420-2, 456-8), and by the opinion of the ME, who reviewed almost of all the evidence and concluded that the plaintiff would have even fewer restrictions than found by the ALJ (Tr. 498-502).

As far as his physical condition was concerned, although the plaintiff alleged disability due to lower back and leg pain, joint problems, poor vision, and an uncontrollable bowel problem (Tr. 116), the ALJ's decision is supported by negative findings relating to bowel abnormalities from treating sources (e.g., Tr. 218, 226, 264, 379-81) and the fact that none of the treating sources ever suggested that the plaintiff was disabled or had functional restrictions. It is also supported by the findings of a recent consultative physical examiner, Dr. Mark Burns, who found no orthopedic abnormalities on the examination in April, 2002 and specifically stated that Mr. Hall demonstrated no functional or neurological deficits. (Tr. 402-5). State agency reviewing sources concluded that the plaintiff did not have a "severe" physical impairment. (Tr. 193, 441-2).

Hall

Mr. Hall points out on appeal that the opinions of the state agency reviewers regarding his physical conditions were given before office notes from Dr. Michael Vories were submitted to the agency.

Dr. Vories submitted notes reflecting treatment from January to August, 2002. (Tr. 468-83). On the plaintiff's initial visit, he complained of low back pain and right abdomen pain, but a physical examination was normal apart from decreased breath sounds, tenderness noted in the lumbar spine, and pain with straight leg raising greater than 40 degrees. (Tr. 482-3). After a second office visit with similar results, Dr. Vories diagnosed "mild" lumbago, "mild" fasciitis, and "unspecified" fibromyalgia. (Tr. 480). He continued with similar findings and diagnoses, although by the last visit they had been modified to include "sciatica", and "opioid dependence." (Tr. 468). The last physical examination actually appeared to find fewer abnormalities than the first. (Id.). No functional restrictions are suggested, although the patient was advised not to drive while taking his described pain medication, Lorcet and Celebrex. (Tr. 469).

The plaintiff argues the ALJ essentially ignored Dr. Vories' diagnosis of fibromyalgia, indicating in the hearing decision only that Dr. Vories found no focal motor, sensory, or neurological deficits and noted only some tenderness in the back. (Tr. 23). The plaintiff correctly states that in Preston v. Secretary of Health and Human Services, 854 F.2d 815 (6th Cir. 1988), the Sixth Circuit found that fibrositis,

also known as fibromyalgia, could be a disabling condition and that, in the absence of definitive objective tests, its presence consisted of "elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." Id. at 819. The plaintiff charges that the ALJ improperly served as his own medical expert in rejecting a diagnosis of fibromyalgia where it had been made by a treating physician.

However, while Preston establishes that fibromyalgia may be a disabling condition, there was also extensive evidence in that case of numerous tests made to rule out other possible causes of Preston's pain, and her treating physician had made findings that her complaints of pain, stiffness, and fatigue were classic symptoms of fibrositis. Id. at 820. The Preston Court described diagnosis of the disease as consisting of a process of "diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients." Id. at 818. By contrast, Dr. Vories' notes, while mentioning tenderness in the back, do not discuss focal tender points, and also appear to include other musculoskeletal problems as reflecting at least part of the patient's diagnostic picture. Perhaps more important, as the Commissioner points out, the mere diagnosis of any condition does not establish disability, and Dr. Vories never suggested that there were any functional restrictions related to fibromyalgia or any other condition. Therefore, the lack of any limitations specifically connected to the

Hall

diagnosis supports the ALJ's finding that the plaintiff had not carried his burden of showing it was a "severe" impairment.

The decision will be affirmed.

This the __12__ day of October, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE